UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sunrise International Leasing Corp.,

Plaintiff,

vs.

Sun Microsystems Inc.,

Defendant.

Civ. No. 01-CV-1057 (JMR/FLN)

**REVISED JOINT SUBMISSION OF THE PARTIES RELATED TO PLAINTIFF'S MOTION TO COMPEL AND DEFENDANT'S MOTION TO COMPEL BEFORE THE COURT ON FEBRUARY 10, 2003 AND ORDER**

A hearing was held on Monday, February 10, 2003, before the Honorable Franklin L. Noel on the Plaintiff's Motion to Compel Discovery of Defendant Sun Microsystems, Inc. and the Defendant's Motion to Compel Production of Certain Spreadsheets and Tables in Electronic Form Previously Produced by Plaintiff's Expert. At the conclusion of the hearing, the Court instructed the parties to file a joint written submission on or before Friday, February 14, 2003 which contains: (1) A list of those matters addressed in Plaintiff's Motion to Compel which have been resolved; and (2) A proposal related to the costs of Plaintiff producing its expert's underlying data and formulae in electronic format. The following is the parties' joint submission as requested by the Court:

## I. ISSUES IN PLAINTIFF'S MOTION TO COMPEL WHICH HAVE BEEN RESOLVED

### A. Volume of SunLease Transactions (Request No. 22, Set I; Request No. 1, Set III):

**The parties have resolved this issue based on the following particulars and no further Court involvement is necessary:**

1. Sun confirmed that the Lease Transaction Database it produced contains a complete printout of all lease transactions funded by General Electric Capital Corp. ("GECC") from April 2001 to present. Sun agreed to remove its "Highly Confidential Designation" on the lease transaction

FILED 3-13-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

database documents, as well all other documents recently produced, with the exception of the Forecast Tool, to allow Sunrise employees to review these documents.

2. Sun has confirmed that the Forecast Tool Database produced on February 3, 2003 is the only document or vehicle available to Sun that "shows sales potential" or transaction opportunities and that this tool was not used widespread on a consistent basis at Sun until fiscal year 2002. Sun has confirmed that it does not track opportunities and does not have an ability to produce data or information on transaction opportunities.

3. Sun has agreed to confirm whether Sun created the document entitled Transaction Booked Summary. Sun will also confirm whether the Transaction Booked Summary is available for the relevant time period and to produce the document(s) if available to Sun.

B. <u>Sun Platinum and SunDemo (Request No. 21, Set I; Request Nos. 12, 16, Set II)</u>:

**The parties have tentatively agreed on a method of resolving this issue based on the following particulars and no further Court involvement is necessary at this time:**

1. Sun confirmed that the "Program Report" produced by GE to Sun for August 2001 is the only month for which this report is available.

2. Sun confirmed that it does not maintain lease transaction detail or specific volume information for the Sun Platinum and Sun Demo program. Sun has provided the volume of equipment purchases by Sun Platinum customers, however, it is not capable of determining or specifying which purchases, if any, were made under terms consistent with a Sun Platinum lease. Similarly, Sun has produced a customer list for the SunDemo program and the lease transaction database for all lease transactions funded by GECC from February 1999 to present; however, Sun is not capable of determining whether any of these transactions were made under terms consistent with a Sun Demo Lease. However, the volume of Sun Platinum and SunDemo leases funded by GECC may be determined from the information produced by GECC.

3. Sun has agreed to determine whether specific sales representatives are assigned to Sun Platinum customers. If sales representatives are assigned to Sun Platinum customers, then the parties agree to discuss the burden imposed on Sun in searching for communications between those sales representatives and the Sun Platinum customers re: "refresh activity" (offering new equipment or encouraging termination).

C. Sun's Interference with Sunrise's Customers (Request No. 17, Set II):

**The parties have tentatively agreed on a method of resolving this issue and no further Court involvement is necessary at this time:**

1. Sunrise will determine whether any of the customers who have had equipment come off-lease since March 2001 have purchased or financed Sun equipment since that time and to create a list of such customers.

2. Sun shall determine whether its sales representatives are assigned to specific customers. If so, the parties agree to evaluate the burden of searching for communications between a limited number of sales representatives and the customers who have made equipment purchases/financings since March 2001 from those sales representatives.

**D.** Remarketing (Request No. 21-22, Set II; Interrogatory No. 7, Set II):

**The parties have resolved this issue and no further Court involvement is necessary.**

1. Sun has confirmed the bates range of documents that comprise the Price list for Sun remanufactured or remarketed equipment.

2. Sun to provide supplemental response to Interrogatory No. 7, Set II with facts that support its denial that it owes Sunrise remarketing assistance by February 24, 2003.

**E.** "Initial Stage of Discovery" Responses (Interrogatory Nos. 4, 5, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, and 24, Set II):

**The parties have resolved this issue and no further Court involvement is necessary.**

1. Sun is to provide a supplemental response to Interrogatory Nos. 7 and 20, Set II by February 24, 2003.

2. By not requesting further supplemental responses to the other interrogatories listed in Sunrise's motion to compel, Sunrise does not waive the right to object to these responses.

**F.** Requests for Production of Documents Set IV:

**The parties have resolved this issue and no further Court involvement is necessary.**

1. Sun has confirmed that all documents related to remarketing have been produced in response to Request No. 2.

2. Sun has provided a response along with responsive documents to Request No. 5.

G. <u>All documents Identified in Deposition</u>:

**The parties have tentatively resolved this matter and no further court involvement is necessary at this time.**

1. Sun shall provide a response to this request by either producing the documents or stating that the documents will not be produced by February 24, 2003.

2. If Sun does not produce the documents identified in deposition, the parties agree to reserve the issue related to the applicability of an adverse inference until trial, i.e., address in a Motion in Limine

## II. PROPOSAL RELATED TO THE COSTS OF PLAINTIFF PRODUCING ITS EXPERT'S UNDERLYING DATA AND FORMULAE IN ELECTRONIC FORMAT

The parties have agreed the following:

### A. The Sunrise Model

(1) Sunrise shall produce its expert's economic model to Sun in an electronic format so that Sun may use the model created by Sunrise's expert and run its own damage calculations. In exchange, Sun shall pay $75,000.00 which represents the reasonable costs incurred in preparing this electronic data for production and preparing written instructions for use of the model, and Sun's fair share of the cost Sunrise incurred in creating the model, only on the conditions and at the time specified in paragraphs B(2) and (B)(3) of below.

(2) Sun agrees that for all iterations that its expert will rely upon in rendering his/her opinion, the expert (or any other representative of Sun) will save the input and output data from each iteration in separate files and will save the altered model containing the changes in a separate file, so that all iterations can be verified by Sunrise. Sun also agrees that its expert will document, for each iteration, the nature of the changes in the input variables and/or the formulas.

(3) Sun shall agree, at the conclusion of this lawsuit, to return all CDs and any copies of the model, to Sunrise and to verify in writing that the model and/or any of the data, calculations, methodologies, or formulae contained in the models have either been destroyed or returned to Sunrise.

**B. The Sun Model**

Sunrise agrees to pay Sun an equal amount ($75,000.00), which represents the anticipated reasonable costs Sun will incur in producing and creating its expert's economic model, including any and all new models, and/or any and all iterations as described in Section A(2) (hereinafter the "Sun Model"), after Sunrise has had a reasonable opportunity to evaluate its need for this information as follows:[1]

(1) Sunrise will notify Sun in writing after a reasonable opportunity to review Sun's expert witness report(s) whether it seeks production of the Sun Model.

(2) If Sunrise requests production of the Sun Model, then neither party will pay the other party any costs associated with the production as the costs imposed by this Order are to be borne equally by the parties. Sunrise agrees, at the conclusion of this lawsuit, to return all CDs and any copies of the Sun model to Sun and to verify in writing that the model and/or any of the data, calculations, methodologies, or formulae contained in the models have either been destroyed or returned to Sun.

(3) If Sunrise does not request production, Sun shall pay Sunrise $75,000 as set forth in Section A of this Order within thirty (30) days of written notification from Sunrise that it does not request production of the Sun Model.

**III. Stipulation for Extension of Time**

Pursuant to Local Rule 16.3 of the Local Rules of the United States District Court for the District of Minnesota and the Pretrial Schedule entered on December 17, 2001, the parties respectfully request this Court to extend certain deadlines related to the disclosure of expert witnesses. Specifically, the parties request this Court to enter an order extending the deadline for Defendant to disclose the substance of testimony to be offered by its expert witnesses from on or before March 13, 2003, to on or before March 27, 2003. The parties further request this Court to enter April 27, 2003 as the deadline for Plaintiff to disclose its rebuttal expert testimony. The parties also seek to extend the deadline for Plaintiff and Defendant to depose expert witnesses (no more than 4) from June 11, 2003 to June 25, 2003. To the extent any of the deadlines as extended fall on a Saturday, Sunday, or legal holiday, Rule 6 of the Federal Rules of Civil Procedure shall apply. This Stipulation shall alter the Court's prior Pretrial Schedule only to the extent specifically set forth herein.

Respectfully submitted,

Dated: March 4, 2003

**PARSINEN KAPLAN ROSBERG & GOTLIEB, P.A.**

By: ______________________

Linda L. Holstein (#150836)
Kevin R. Coan (#029357X)
Anh T. Le (#0311923)
100 South Fifth Street, Suite 1100
Minneapolis, MN 55402
(612) 333-2111
(612) 333-6798 (fax)

---

[1] Sun agrees that the production of its expert's report and exhibits are not included within the scope of this Stipulation. Sun shall produce its expert report and other information as required by Rule 26(a)(2), excluding the underlying electronic data which is the subject of this Stipulation.

**SONNENSCHEIN, NATH & ROSENTHAL**

Jerome T. Wolf (#0118461)
James M. Kirkland (admitted pro hac vice)
4520 Main Street, #1100
Kansas City, MO 64111
Telephone: 816-460-2400
Facsimile: 816-531-7545

Michael D. Hultquist (admitted pro hac vice)
233 South Wacker Drive, # 8000
Chicago, IL 60606
Telephone: 312-876-2377
Facsimile: 312-876-7934

Attorneys for Sun Microsystems, Inc.

Dated: March 11, 2003

OPPENHEIMER WOLF & DONNELLY LLP

By: Christine Lindblad Nessa

David B. Potter (#121642)
Christine Lindblad Nessa (#0277666)
Bray M. Dohrwardt (#315151)
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402-1609

IT IS SO ORDERED.

BY THE COURT:

Franklin Noel

Hon. Franklin L. Noel
Magistrate of the United States District Court
District of Minnesota